Thank you, Your Honor. May it please the Court, I'm Jennifer Garcia from the Federal Public Defender's Office in Arizona on behalf of Mr. Stokley. We have filed in this Court a motion asking it to stay its mandate on appeal and remand us to the District Court to allow that Court to reconsider its procedural default ruling on one of the claims that was raised in Mr. Stokley's original habeas petition in the District Court that was filed several years ago. And the reason for that motion is because after this Court had decided Mr. Stokley's appeal and the time for filing certiorari had already begun, the United States Supreme Court issued a decision which directly impacts the ruling of the District Court in this case. And because of that, there's a claim of considerable constitutional magnitude in Mr. Stokley's case that can now be decided on the merits by the District Court. What do you make of the fact that you appropriately argued in your cert petition with respect to Maples and asked the Court to tell us to remand the case, but that that petition was denied? Your Honor, that was in the context of the IAC claim that was the subject of this Court's earlier opinion. And because the claim at issue here is an entirely different claim that was not ruled on on the merits by the District Court because it found the claim to be procedurally defaulted and that the actions of Ms. Leavitt in this case couldn't rise to the level of cause. So it really was on a totally different basis than what we're asking the Court to do here. And there is case law precedent for similar situations where there's been an intervening change in the law, even at this stage of the case, that has been found to be adequate to justify staying the mandate and reconsidering and remanding the case or reconsidering the opinion of this Court. I think if you look at Belvert and Stokley. Mr. Garcia, this is Judge Bea. Perhaps I didn't quite catch you. At page 30 and 31 of your petition for certiorari, you cited the Maples case. You say that you cited it for a proposition other than the one we're discussing today? One second. Let me grab that, Your Honor. Let me pull it up so that I can be sure I don't misspeak. Could you find page 30 of that cert petition? Yes. There you go, Judge. It seems to me that you were arguing this very point that we're arguing today, which is that the reasoning of Justice Alito on Holland v. Florida argues for a finding that Ms. Leavitt abandoned your client. And so I had the same question that Judge Kuhn had. What do you take of the Supreme Court's refusal to grant certiorari on that issue? One second while I find it. I'm sorry. What page did you say, Judge? 30 and 31. 30 and 31. You say Leavitt was not functioning as Petitioner's agent when she defaulted his claim. Yes. That sounds pretty much like what we're talking about here, right? No, absolutely, Judge. And now that I see what you're talking about, I don't disagree that the substance of that argument is the same as what we're saying here, but it's in the context of a different claim. I think the argument that was raised in the cert petition had to do with the IAC claim of trial counsel at sentencing for failing to retain a neuropsychologist and present evidence that tied Mr. Stokely's brain damage to the crime here in order to establish the G-1 mitigator at sentencing. And that was the context of this Court's earlier opinion in this case. And so the cert petition discusses Ms. Leavitt's failures and her failure to act as Mr. Stokely's agent, but it's in the context of her failure to develop that claim in the context of pinholster and to present the evidence of the brain damage and its impact on Mr. Stokely's behavior. So it's sort of a separate issue from what we're arguing here, which again involves Ms. Leavitt's behavior, but in the context of failing to raise a different claim. Could I ask you about this? It's certainly a complicated procedural history here. But if you go back to the State supreme court decision and you look at the appeal in that case, which as I understand it was by a lawyer who, Mr. Abrams, who was not the trial counsel, and so he raised a series of things, including the problem with the death sentence, then the supreme court issues its decision. He then moves for reconsideration, and he doesn't raise this issue, at least not directly. So my question is, why is Ms. Leavitt the first, you know, chink in the chain, so to speak? Would we have to go back and look and see at this stage whether Mr. Abrams, you know, in effect defaulted and abandoned the client in some way in order to have a Maples claim? I think that's a very good question, Judge. And one of the things, the reason why I think that that's not clear is because there has never been briefing on the merits of this underlying claim. But at this point, the method for, the correct method for exhausting one of these now known as a Tenard claim isn't clearly, isn't clear from the way this Court has ruled on the different cases. And the district court of Arizona specifically has ruled in several different ways. And if you look at the procedural default ruling on this claim in this case, the district court ruled that this claim was not exhausted because it had not been raised in a motion for reconsideration or in the PCR proceeding. And right now, it appears that the district court is sort of back and forth in different cases as to whether or not it is required to be exhausted in a motion for reconsideration by appellate counsel or by raising it in a post-conviction petition. And it's a dual basis for the ruling here. But my understanding is you didn't really argue to us that Mr. Abrams' default was a problem. So in other words, we'd have to have Mr. Abrams come under a Maples umbrella if it's required that it be done there, at least in the State direct review proceeding. And the fault there, Your Honor, would still be attributable to Ms. Levitt, because if it is required to have been raised in a motion for reconsideration, she did not raise Mr. Abrams' failure to do so as an appellate IAC claim. And so because of that, it's yet another way that it would be attributable to her. Either that she should have raised his failure to do so in the motion for reconsideration or that she should have raised it on her own in the PCR, which the district court seems to possibly do. Ms. Garcia, one other question, if I could. It's not only that Mr. Abrams didn't raise the Eddings issue on motion for reconsideration, but as I read the record, and please correct me if I'm wrong, neither did Ms. Ryan, who was appointed and raised 31 claims, both trial and appellate claims, and neither did Mr. Stokely in his letter to the Supreme Court saying that Ms. Levitt had not properly represented him. If your position is that failure to raise the Eddings claim is such an abandonment, such a bad thing, a bad performance of professional duties, so as to abandon the client within the meaning of Maples or the concurrence in Holland, how do we deal with Ms. Ryan's failure to raise the claim and Mr. Stokely's failure to raise the claim? Garcia, I don't think that either one of those two actions are enough here to bar Mr. Stokely from being able to litigate this claim if he can show cause for the default. First of all, Ms. Ryan, when appointed by the trial court in this case, she was only on this case for approximately 30 days. She was very clear in the filings that she did during those 30 days that she didn't have co-counsel, that she had no opportunity to investigate this case. And if you look at the amended the motion for reconsideration and amended PCR that she filed, she states several times that it is by no means a complete list, that she has not had the opportunity to do any kind of investigation or anything beyond a cursory review of the record in this case. So she made no representation that that was all that was there. That was simply what she'd been able to find in her limited time on the case, which was also spent litigating as to why she should be able to stay on the case. So I certainly couldn't think of her. She found, what, 30? However many she found. I think 30 or 31 is correct. 31. 31. And claim 23. The only one she didn't think of apparently was this one. There may very well be other ones, Judge. I'm not sure. Well, nobody's raised them. But she's just. The 23rd claim was Arizona's death penalty is arbitrarily and capriciously imposed. That's sort of a general theory. A particular instance of that would be failure to follow the Eddings rules. But when she argued that the death penalty is arbitrarily and capriciously imposed, she didn't mention Eddings, correct? I don't believe that she did in, again, the limited briefing that she filed in her very short period of time on this case. Breyer didn't actually file a formal petition, did she? No, Judge. She filed simply a motion to amend. And as I said, she was clear that she had not had the time to lay out anything formal. And to quickly go back to Judge Bea's question about Mr. Stokely, I think, again, Mr. Stokely himself can't be faulted for this, because, first of all, Mr. Stokely should have been represented by counsel to raise these claims for him. But in addition, the record is very clear that he asked Ms. Levitt to provide him with the record in his case so that he could go through and look at things and make recommendations as to claims that he wanted included, and she refused to provide it to him. I mean, I agree. I don't think we can put it on Mr. Stokely. He's in a very difficult situation. He's not a lawyer. He needs a lawyer. And he continually stated, Your Honor, that he was not being properly represented and that he needed a new lawyer to step in and help him here. Ms. Garcia, let me ask you. I'd like to have you address abandonment, you know, the heart of this. The heart of this. The heart of Maples. Why shouldn't, you know, Maples be read very narrowly? I think that Maples' actual abandonment, whether you like it or not, Stokely was represented by Levitt and then by Ryan and then by Levitt. Yes, Judge. And I think the argument that Mr. Stokely made below really had two separate prongs. He first argued that, you know, looking at the actions of Ms. Levitt, that she never did establish an attorney-client relationship with him due to her consistent failure to communicate with him, her failure to do any work on his case, her failure to timely file things. So that's where she was appointed to representative and she was representative. He didn't object until she filed the two-claim post-conviction petition. Exactly, Judge. And that's my second point, which is that the other thing that he argued was that in any event, even if there was an attorney-client relationship, that that relationship was terminated as soon as she breached her duty of loyalty to him. And I think if you look at Maples, Maples includes language to that effect when quoting the restatement of agency, that the representation can be terminated upon professional or egregious professional misconduct or a serious breach of loyalty, I think, is the language. And here Stokely filed complaints with the State Bar regarding her per ---- regarding his relationship with her, correct? Yes, Judge. And then she responded at some point along the way. She did respond. But we're not ---- we don't have those letters in the record. What was ---- was he just upset with her, that he didn't like the petition that she filed, or what? I'm not sure that the letters to and from the State Bar are in the record, but my understanding is that the substance of them is very similar to the letters he wrote to the trial court and the Arizona Supreme Court and the letter he wrote to the Arizona Capital Representation Project, all of which are in the record. I believe they're attached to the motion to amend that Ms. Ryan filed in the PCR record. So didn't she have some obligation, once she was appointed by the court, didn't Levitt have some ethical obligation to, you know, to look out for Stokely? She absolutely had an ethical obligation to look out for him. And I think if you see, once she was reinstated and looked at the documents that had been filed by Carla Ryan, she spent the bulk of her time arguing as to why Ms. Ryan was wrong and why Ms. Levitt had performed effectively and why she had done a good job. Ginsburg. But isn't that in part what ---- you know, when people file Anders briefs, they're representing the person, and she, in effect, it's similar to as if she'd filed an Anders brief and saying, look, there are all these claims. I don't think any of them are legitimate in terms of going forward or have a colorable basis. And Ms. Ryan listed all these. But so I kind of viewed it like she was filing an Anders brief. Why not? I mean, what it gets down to is that she didn't file the one claim that you want to have undefaulted. Nobody else seemed to have thought up that claim, either. That begins to sound to me more like IAC than Mabel's. Can I answer your question? Your Honor, I see I'm out of time. I just ---- No, no, no. We want you to continue. Okay. I don't think that it's the equivalent of an Anders brief, because I certainly have never seen an Anders brief filed where counsel spent the majority of the argument talking about why they had done a good job previously and arguing forcefully against claims that they should be dismissed, claims that were raised by the Petitioner themselves. In fact, Anders allows for supplemental briefing to be done by a Petitioner as to claims that they think should be included. And here, Mr. Stokely asked for the record, was never provided it, despite his repeated efforts. And this ---- she was acting essentially as another prosecutor against him, which is certainly not the role of counsel, even in an Anders case where counsel might think that there are no colorable claims. And, you know, as far as this claim is concerned, this is a claim that was identified and raised in his Federal habeas proceedings. There might be other ones that were not, but this specifically was ruled as defaulted by the district court in this case. It's a colorable claim of constitutional magnitude, and certainly it's not, I think, nitpicking to say that these ---- that there were problems with Ms. Leavitt's representation. And the fact that we've identified a colorable constitutional claim, I think, should give rise to a remand for the Court to consider the actions of Ms. Leavitt in this circumstance. I know you're over time, but I have one last question for you, which is, what do you envision would happen at the district court if we were to grant ---- if we were to grant your motion? I would imagine that it would be analogous to what the way the district court has handled the remands in light of Martinez, which there have been several, where the district court has set a briefing schedule for the briefing to include. What would the district court determine? Whether or not ---- First, whether there is a Maples claim? Absolutely, Judge. Whether or not Ms. Leavitt's behavior could rise to the level of cause, and if so, whether we could establish prejudice, and then the under ---- and then at that point determine the underlying merits of the claim. Could I ask you a point on prejudice? Because most of the briefing is really focused on getting to the first prong of Maples and abandonment. But in the trial court, the trial court said that there are no mitigating circumstances that would balance off, and saying that even if they had found all of the mitigating circumstances to exist, balanced against the aggravating factors, it would not be sufficiently substantial to call for leniency. So I'm wondering, given the high standard of the stay of a mandate, and given this finding, how we would overcome that? Well, the claim at issue here, Judge, involves the Arizona Supreme Court's review of the sentence. I understand, but then if the trial court and then the Arizona Supreme Court sort of essentially said the same thing at the end of its little opinion, its opinion as well. I think one thing this Court has made clear in its ---- in the cases that have considered these type of Eddings claims is that they look to the clarity of language used by the Arizona Supreme Court. And cases where this Court has found that there was not an Eddings violation has been because the Arizona Supreme Court included language to the effect of, and in any event, you know, even considering all proffered mitigation, it's not sufficiently substantial. And that language is not present here. If you look at the conclusion, the Arizona Supreme Court is clear in enumerating the mitigating circumstances that it considered in weighing it against the aggravation, and it does not include the ones that it unconstitutionally declined to find constituted mitigation under Eddings and Skipper. So it's clear from their opinion that they didn't consider the bulk of the mitigation evidence that was presented here. They specifically limited it to those that they had found constituted mitigation. Kennedy. Kennedy. Ms. Garcia, I want to take a follow-up question that Judge Pai has put, which is of great interest to me. You say that if we remand to the district court, it could determine the issue of cause. Let me ask you this. What facts are disputed here? What further evidentiary matters do we have to have to know what Ms. Leavitt did or didn't do? I think, Judge, that the State has disputed the fact that counsel abandoned Mr. Stokely during the proceedings below. That's a conclusion of law. Please, if you would, tell me what facts are in dispute regarding Ms. Leavitt's actions that need further development by the district court? Because I'm thinking that we are in just as good a position to take a look at the records and decide whether Ms. Leavitt did or did not abandon Mr. Stokely. Judge, I certainly think that the evidence that we've put forward regarding Ms. Leavitt's behavior is more than adequate to justify a finding that she abandoned him here. So what further evidence do you think has to be developed along that score? Well, I think, Judge, that in this case there's never really been a discussion of prejudice. The district court declined to reach the question of prejudice because it found that Ms. Leavitt's behavior could not constitute cause because of Coleman. And so there's never been any kind of discussion about prejudice in this case. And also the merits of the underlying claim have never been fully briefed. If you look at the district court's order, the order finding the procedural default, I think it's district court document No. 70, it goes on the claims that it found to be exhausted in right for merits review were given the opportunity for supplemental briefing. And here, especially the State, has never had the opportunity to respond to the merits of this claim, and the pleadings that we have done have really been in the context of a notice pleading as in the petition. Ms. Garcia, do we know if there was any communication between Ms. Leavitt and the district attorneys or the AG's office when all this was going on? Judge, I don't think that that's in the record. If there was contact, I don't believe it's in the record. I think it's very clear from the record that the attorney – I mean, Ms. Leavitt was reinstated at the urging of the attorney general's office. And we don't have the letters that were exchanged with the State bar or whatever – we don't even know what the State bar did in response to that, do we? I don't believe that's in the record, Judge. And as to the issue of cause, putting aside prejudice and putting aside the merits of the claim, just as to cause, what further evidentiary material do you look forward to developing in the district court if there's a remand? Judge, I think that as far as we're concerned, we've put forth more than enough evidence to justify a finding of cause. Thank you. You can't think of anything further you want to go into, right? Certainly not off the top of my head. It would only be the prejudice and the merits of the underlying claim. All right. Thank you. Thank you. Mr. Bass, you may proceed. Thank you, Your Honor. This is Jonathan Bass representing the State of Arizona, and I want to thank you very much for the opportunity to appear by telephone. The State does urge this court to deny the motion. This is not one of those rare instances where the court needs to stay the mandate. As Judge Bea was referencing there, this court does not need to remand for any kind of evidentiary development. The court can resolve this strictly on the record that's before it. A Maples claim requires evidence that the state attorney completely abandoned the defendant, and there's no need to stay the mandate and remand on that question because the record is plain that Stokely was at all times represented by Harriet Leavitt. Now, granted, there is some dispute over the quality of her work, but Maples requires abandonment, not a showing of negligence or an allegation of ineffective assistance of counsel. Mr. Bass, let me ask you this. In Maples, the court talks about, you know, basically destroying the loyalty relationship. Words to that effect, I don't have the exact phrase in mind. But, you know, at one point here, Stokely complained to the State Bar about Leavitt, right? Yes, Your Honor. And then she wrote she sought to be relieved, claiming that there was a complete breakdown in the attorney-client relationship. Isn't that right? Yes. And then the AG steps in, and after the superior court grants the request to be relieved as counsel, and the AG later urges the court to reconsider and to reinstate Leavitt. What right, what interest it is of the State to sort of try and control who's representing a petitioner in a circumstance like this? Your Honor, on that question, I can provide some guesswork as to why I think that was done many years ago, but I think that the rationale is the State was simply not having this procedure delayed any further than it had to be. While there was some breakdown in the relationship between Ms. Leavitt and Mr. Stokely, I think for whatever reason, the State at that time decided that it would simply ask the court to reconsider the appointment of Ms. Ryan, and the court did so. Well, Mr. Bass, that's not what the State motion was about. The State motion said that Pima County would have to pay for some attorney to acquaint herself or himself with the record, and it was an extensive record, and they wanted to save money, and that's why they made the motion. Well, Your Honor, I understand. I think the State's attorney at the time was thinking that it simply wasn't in the interest of the State, it wasn't in the interest of anyone to simply appoint another attorney at that stage, that perhaps the relationship with Ms. Leavitt could be salvaged. I'm not justifying that act, but I'm saying it was done, and it apparently persuaded the State court to keep Ms. Leavitt on the case. So let me ask you this. When there has been a breakdown in the attorney-client relationship, can the court, having recognized the breakdown, then just reimpose counsel? I mean, is that... I think the court has to use its judgment in that. This just seems very odd. Well, Your Honor, I understand. I understand that it's an unusual record, and we don't often see this, but I can say that when this was argued on the appeal stage last year, that this court essentially assumed that there were many difficulties with Ms. Leavitt's representation, and that's why this court assumed, without deciding, but assumed that Stokely, for the sake of his argument, had proved cause and prejudice, that he wasn't going to be hampered by Ms. Leavitt's representation on that IAC claim, that the court would give him the right to present the claim anyway in State court. And I think that that decision and the opinion really resolves the issue here. I don't know to what extent the court needs to even resolve whether there was any abandonment or not, because even if there was abandonment, all Mr. Stokely gets from that is a finding of cause and prejudice. And this court has essentially already given him that on the IAC claim that he was presenting at that time. No. No. His claim here is a little different, because here it goes to a very specific aspect of the sentencing, although I suppose if it ran out, I don't know if this would go back to the trial court or the Arizona Supreme Court. Let's just say that the district court granted relief. In your view, would it go back for an independent determination by the Arizona Supreme Court or would it go back to trial court? I think that it would go back. I think it would go back. Well, I don't know for sure, Your Honor. I'm just going to say I think it would go back to the Arizona Supreme Court for a redetermination, because that was an independent review. But I honestly can't say for sure if it would go back to the Arizona Supreme Court. It might start at the Arizona Supreme Court, and perhaps they would remand it to the trial court for another redetermination. But if he were to be sentenced again, I would imagine he'd have to be sentenced by a jury at this time, wouldn't he, because if it went all the way through a complete resentencing. But I don't think that would even need to be done, because it's clear from the Arizona Supreme Court opinion that there was no Tenard violation. ER 151 on the record, which is where the opinion is, there's a language that it says in the opinion that a defendant must prove mitigating factors by a preponderance of the evidence. But it goes on to say the sentencing court must, of course, consider all evidence offered in mitigation, but it's not required to accept such evidence. That's exactly what was done here. Even if we were to go through the motions of finding abandonment and finding cause and then allowing Mr. Stokely to argue the claim again, either in district court or this court, there's no Tenard violation, because the mitigation that he says wasn't properly considered because it was unrebutted, was considered. It simply wasn't accepted. And the trial court made that claim, and the Supreme Court in its independent review made it very clear that it was looking carefully at this mitigation, but it simply wasn't going to find that it had any weight. Well, that might go to some prejudice issue, but I guess the one question I had is, they did link it up under family history to the crime itself, although they sort of undid that toward the end of the opinion, but not completely. Wouldn't that be a violation? I don't think so, Your Honor. I think that still goes to the weight. It was still considered. Mr. Stokely was, you know, a grown man when he committed this crime, and he – I think the court at that point was considering simply whatever weight that the family history might have provided him in mitigation at that point. It's certainly considered, though, so there's no Tenard violation. Mr. Bass, this is Judge Paez again. At the beginning of our session, Judge McKeown raised a question about appellate counsel's actions on direct appeal and on the motion to reconsideration, where this claim was not raised at that point. Is this claim one that has to be raised on direct appeal, or can it be raised alternatively in a post-conviction petition? It could be raised on direct appeal, because the – But is it required to be raised on direct appeal and dealt with on direct appeal because the Arizona Supreme Court does its independent review? I – that's a good question, Your Honor. I think that – I think it should be raised. I think it should be raised on direct appeal. I can't quote a case for you right now that would – I was hoping you might have a case or something. Right. Well, I don't. I'm sorry. But the fact – well, I don't. But the fact that the Arizona Supreme Court was doing independent review at that time certainly didn't prevent all sorts of sentencing issues from being raised, and on – in the appeal itself, even by attorneys knowing that the Supreme Court was going to be independently reweighing and looking at the evidence and so on, you know, whether an aggravator was properly found or not. That was going to be redone by the Arizona Supreme Court, but I suggest that it still should have been done by the appellate court, but I don't have a case for you on that. Okay. All right. Or by the appellate lawyer. All right. All right. But at least you – I mean, at a minimum, it would have to be raised before the Arizona Supreme Court at some point, correct? Yes, Your Honor, I think it would be. It could be raised – it could have been raised by Ms. Leavitt as well, as Ms. Garcia was saying, in the PCR proceeding, in another context, but yes, I think it should have been raised on direct appeal. But I guess maybe what I hear Judge Paez asking, I don't want to put words in his mouth, is the fact that it wasn't raised on direct appeal, that wouldn't preclude from being raised in the PCR proceedings, correct? That's right, Your Honor. That's right. Yes. I think it certainly could have been raised in the PCR proceedings, whether it was or not, on the appeal. Your Honor, essentially, that's my argument. I don't think that there's any reason to remand, to develop this claim. There's simply nothing to develop. Ms. Leavitt did not abandon Mr. Stokely. However bad her performance might have been, she may have been negligent, she may have done things that other attorneys may have done much better, but at no point did she abandon Mr. Stokely. And for that reason, he has no Mabel's claim. But even if he did, even if he could show abandonment, he's not shown that he could win on the merits of his claim. And there's simply no reason for those, on those grounds then, to grant this motion and say the mandate and remand. The only reason you say, Mr. Bass, that he couldn't win on the merits is because you've cited a passage from ER 151, in which the Arizona Supreme Court says that it considered all the evidence on mitigation? Well, I think that, yes, Your Honor, I mean, I start with that. I start by saying that the court understood what the standard was, announced that it would apply it, and properly said how it was going to do its review. And then if you go through the... I can't put my finger on it right now, but didn't the Arizona Supreme Court also say that it wouldn't consider the mitigation evidence because it was not causally linked to the commission of the crime? Your Honor, I'm not aware of that language in the opinion as you've just stated it. And I've got the opinion in front of me here. But I don't see where the court excluded consideration of any evidence simply because it was not causally connected. I thought you could arguably say that about the family history. I don't think... Alcohol, mental disorders, et cetera, they were pretty clear it wasn't linked up. But then when they talk about non-statutory mitigating factors, they go through 14 of these. Right. And, Your Honor, looking at family history on ER 156, the court's certainly considering it. It concludes by saying that family history doesn't warrant mitigation, that then it was 38 at the time of the murders. He may have had a difficult childhood, but he's failed to show how this influenced his behavior on the night of the crimes. And I think that's just a pretty straightforward way of saying we're considering it. But it's simply so far in the past that it simply lacks any weight. I don't see the court here saying they're not considering it. Well, the court said, and I'm quoting now from page 473, a difficult family background alone is not a mitigating circumstance, citing State v. Wallace. This can be a mitigating circumstance only, quote, if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control. That seems to me to say it's irrelevant unless it's causative. Your Honor, I understand, but I think I'd read that to say that it simply has no weight unless it's causative. Not that it can't be considered, but that he's got to link it up some way to give it any kind of weight in mitigation. And I frankly read that to say that that's what the court's getting at, because it goes on to say, as you know, that adult offenders have a more difficult burden because of a greater degree of personal responsibility for their actions. They're considering it. They're finding it too attenuated in time and simply not giving it any weight for that reason. But they're not wholesalely just disregarding it. Any questions? Did you have any further questions, Judge Bea? None. Thank you. No. Thank you. Thank you, Mr. Bass. Thank you, Your Honor. Ms. Griswold, you may have a minute for rebuttal. Although we took you substantially over your time, that was due to our questions. Thank you so much, Judge. I just wanted to make a quick point, first of all, that I think that the Arizona Supreme Court case law is very clear that if you look at the opinion in Mr. Stokely's case, that they do not consider the difficult family background and the good behavior while incarcerated to be mitigation. So even if they say later that they considered all mitigation, they've expressly found that those two factors weren't mitigation, and so they weren't going to consider them. And when you look at the United States Supreme Court case law that has developed since this claim was raised in the habeas petition, I think both the Smith case and the Tenard case are clear that there's two parts to the consideration of mitigation. It isn't only finding things to constitute mitigation, but it is, in fact, giving effect. The Tenard specifically requires that the sentencer be able to both consider and give effect to the mitigation evidence. And even if Mr. Bass is correct and that the rule was simply that it got no weight if it wasn't causally connected, that still violates the rule of Eddings, because if you only give mitigation any weight at all if it's causally connected, you can't be giving effect to that mitigation. So I certainly do not disagree that the sentencer is free to assign various amounts of weight or could even find that it's entitled to little weight. But to have a per se rule that mitigation is entitled to no weight whatsoever absent a causal connection does not get them out of the problems as described in Eddings or Tenard or Smith v. Texas. That's all that I have unless there's any further questions. I think not. Thank you for coming. Thank you, Judge. I appreciate your coming. Thank you, counsel. Thank you, both counsel, for your argument. Stokely v. Ryan is submitted for decision. Thank you.
judges: McKeown, Paez, Bea